STATE *vs.* FLAVIUS O. BEAL.

Penobscot.   Opinion June 5, 1883.

*Innkeeper. Trout. Stats. 1878, c. 75, § 16; 1879, c. 123, § 4; 1879, c. 104.*

An innkeeper having trout, not alive, in his possession on the twenty-seventh day of January, and the tenth and twelfth days of February, 1882, had the same cooked and served to his guests in his hotel at regular meals, the bills of fare for such meals showing such fact; *Held,* That those acts constituted a sale of trout in violation of stat. 1878, c. 75, § 16, as amended by stat. 1879, c. 123, § 4. *Held further;* That by stat. 1879, c. 104, the penalties of stat. 1878, c. 75, § 16, either in its original or in its amended form, were not remitted as to Great Tunk pond.

APPLETON, C. J., dissenting.

ON REPORT.

Indictment of the keeper of a hotel for having trout, not alive, in his possession, between the first day of October and first day of May, with intent to sell the same in violation of stat. 1879, c. 123, § 4, amendatory of stat. of 1878, c. 75, § 16.

The opinion states the facts.

*Benjamin H. Mace,* county attorney, for the state.

*Wilson and Woodward,* for the defendant.

Statutes 1878, c. 75, and 1879, c. 123, are penal statutes. *Com.* v. *Hall,* 128 Mass. 410.

They are, if possible, to be so construed as to leave the citizen free from penalties and from danger, without appealing to the discretion of any one. *Butler* v. *Ricker,* 6 Maine, 268.

And all parts of the statute being upon the same subject, are to be examined together, to ascertain the intent and any meaning which is found to be incompatible with any plain provision, must be rejected. *Merrill* v. *Crossman,* 68 Maine, 414.

As section thirteen, as amended, does not apply to Great Tunk pond, there is no annual close time for such fish in that pond. And

counsel contended, in an able argument, that sections sixteen and seventeen, so far as they applied to fish, caught in Great Tunk pond, were incompatible with the plain provision of the law and must be rejected.

SYMONDS, J. In January, 1882, the defendant, a hotel-keeper in Bangor, having received from a friend some trout which were caught during that month in Great Tunk pond, in Hancock county, had them cooked and served to the guests of the hotel at the regular table, as part of the common bills of fare. It is not denied and there can be no doubt, that these facts include possession of the trout by the landlord with intent to sell them, offering them for sale, and a sale completed. *Groves* v. *Kilgore,* 72 Maine, 489.

Either of these three acts, to sell trout, to expose them for sale, or to have them in possession with intent to sell them, between the first day of October and the first day of the following May, is a direct violation of pub. laws, 1879, c. 123, § 4; an amendment of the act of 1878, c. 75, § 16.

By chapter 104 of the laws of 1879, the penalties of certain other sections ( § § 13, 15 ) of the original act of 1878, do not apply to the taking of trout in Great Tunk pond. The penalties specially remitted in reference to this pond, relate to taking fish in close time; but all the prohibitions contained in the original act, against certain modes of taking them, (§ 14,) and against the sale of them, (§ 16,) remain in full force upon these, as upon other waters of the state. There is no trace of a legislative intention to exempt Great Tunk pond from the operation of section sixteen, either in its original or in its amended form.

The argument is, however, that inasmuch as this section sixteen (1879, c. 123, § 4) forbids transporting from place to place, as well as selling, offering for sale and possession with intent to sell, if applied to this pond, it deprives the remission of the other penalties by the act of 1879, c. 104, of all value, because the right of fishing is of no account if one cannot sell or transport the fish.

If there were no answer to this objection, the question would still remain whether, allowing it its full force, any other effect

could be attributed to it, than to exhibit a defect in the legislation on this subject, a failure to make the special act broad enough to confer a privilege which, under the general law, was a valuable one.

But we think that if fish were caught at this pond during the period which was the close time for other waters of the state, and still were caught in a manner which was lawful at that place under the special act, taking them home to dispose of them in any legal way, would not be an act forbidden by section sixteen. The taking, the possession, the purpose, would all be lawful; the act of carrying, if in common phrase, or in a legal sense it could properly be described as a transportation from place to place, would manifestly be wanting in that element of illegality against which it is clear, when all the provisions of the act are examined together, the penalties of that section were directed. But we do not meet directly in the present case the difficulty, whatever it may be, which arises upon the construction of that part of the section. It is all a part of the general law of the state. The waters where these trout were caught have never been exempted from the operation of it. The act of the defendant was a. violation of its provisions.

*Judgment for the state.*

WALTON, BARROWS, DANFORTH, VIRGIN, PETERS and LIBBEY, JJ., concurred.

DISSENTING OPINION BY

APPLETON, C. J. By the act of 1878, c. 75, § 13, a close time is established in the waters of this state, within which landlocked salmon, trout and togue, are not to be taken.

By section fifteen of the same chapter, a penalty is imposed for taking, catching, killing, or fishing for in any manner, landlocked salmon, trout or togue.

By section sixteen, the sale, exposure for sale, or having in possession, with intent to sell or transport from place to place, in this state, any land-locked salmon, trout or togue, during close time are prohibited under a penalty.

The defendant is indicted for having trout and togue within close time for sale.

But the case finds that the trout and togue were caught in Great Tunk pond, in Hancock county.

By c. 104, of the acts of 1879, it is provided "that the provisions and penalties contained in sections thirteen and fifteen of chapter seventy-five of the public laws of 1878, shall not apply to the taking of togue or trout in Great Tunk pond in townships, numbers seven and ten, in Hancock county."

There is then no close time for taking in Great Tunk pond. There is no penalty for taking, catching, killing, or fishing for trout or togue, there at any time. The fish caught there were lawfully taken. The fisherman might give them away, for that is not prohibited. He might eat them. His family might partake of the result of his skill. It will hardly be contended that if he and the rest of the family, could eat, that if he happen to have a boarder, whether for a longer or shorter period, that the penalty would attach for the fish eaten by the boarder, and not to the portion partaken of by the rest of the family.

As the fish may be given away, the donee and his family have the same right of cooking and eating which belongs to the donor.

The sixteenth section can only apply to the sale of fish caught in violation of law — to fish, illegally, in the possession of the seller. It cannot reasonably be held applicable to the sale of fish, specially authorized by statute to be taken. It applies to fish taken contrary to the prohibitions of the statute. The different parts of a statute are to be construed together. It is absurd to suppose that the legislature intended to punish criminally one for giving away or selling fish it specially authorized him to take and eat. *Com.* v. *Hall*, 128 Mass. 411. Thus making it an offence or not, accordingly as the fish is eaten by the fisherman or one purchasing of him.

But this is not all. By section sixteen, not merely is the sale, &c. of any land-locked salmon prohibited, but a penalty is imposed on its transportation, "from place to place within this state." The prohibition against transportation is equally imperative as that against selling.

The fish then, though authorized to be taken, and, as the counsel for the government admit, to be eaten, cannot be transported to the dwelling of the fisherman without incurring the same penalty as that prescribed for selling. The result then, as claimed by the state is, that the fish must be cooked on the bank of the pond or thrown back into it.

The section sixteen, under consideration, imposes a penalty for selling and transporting certain fish in close time. The next year license was granted to take fish in the Tunk pond during the whole year. This was by necessary implication a repeal, as to fish taken in Tunk pond, of the penalty imposed for having fish in his possession by c. 75, § 16, of the acts of 1878. The close time was abolished as to that locality. It is but a poor compliment to the intelligence of the legislature to suppose it meant to grant license to take fish which men could neither sell nor carry away without committing a violation of law, yet such is the inevitable result of the claim set up by the government. It would be but a paltry boon to the public to authorize the taking of fish, which the fisherman could neither sell, give away or even transport from the pond where caught without incurring a penalty.